**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000037
02-MAY-2025
07:52 AM
Dkt. 207 AMSDO**

NO. CAAP-21-0000037

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

CHRISTINE SOROKA, Plaintiff/Counterclaim Defendant-Appellant, v.
CITY AND COUNTY OF HONOLULU, a municipal corporation,
Defendant/Counterclaimant-Appellee,
and CLARENCE F. NEVES, JR., Defendant-Appellee,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; DOE BUSINESS ENTITIES 1-10;
DOE NON-PROFIT CORPORATIONS 1-10; and DOE
GOVERNMENTAL ENTITIES 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 17-1-0339-02 JMT)

AMENDED SUMMARY DISPOSITION ORDER
(By: Leonard, Acting C.J., and Wadsworth and McCullen, JJ.)

This appeal arises out of a dispute concerning a motor vehicle collision involving a Honolulu Police Department (**HPD**) vehicle, brought by Plaintiff/Counterclaim Defendant-Appellant Christine Soroka (**Soroka**) against Defendant/Counterclaimant-Appellee City and County of Honolulu (**the City**) and Defendant-Appellee Clarence F. Neves, Jr., an HPD officer (**Officer Neves**) (together, **Defendants**). Soroka appeals from the Judgment entered on September 8, 2020, in the Circuit Court of the First Circuit (**Circuit Court**).[1]

Soroka alleged in her Complaint that Officer Neves, while driving south on Puuloa Road in Honolulu, negligently crashed his marked HPD vehicle into the vehicle Soroka was

_____

[1] The Honorable John M. Tonaki presided.

driving, causing her serious bodily injury.  As relevant to this appeal, following a jury trial, judgment was entered in favor of Soroka and against the City on Count I of her Complaint, for negligence.  Soroka was awarded damages in the amount of $347,000.00, which were reduced by 46% for comparative negligence and an additional 40% for apportionment of Soroka's pre-existing injury or condition, for a total award in her favor and against the City in the amount of $112,428.00.  Pursuant to the Circuit Court's "Amended Findings of Fact, Conclusions of Law, and Order Granting Defendants['] . . . Motion to Dismiss Counterclaim" (**Order Dismissing Counterclaim**), entered on September 4, 2019, the City's counterclaim was dismissed with prejudice.

On appeal, Soroka contends that the Circuit Court erred in:  (1) allowing Defendants to present evidence of Soroka's alleged comparative negligence, where the dismissal of the City's counterclaim against Soroka "amounted to an adjudication on the merits"; (2) allowing HPD officers to express various legal opinions; (3) preventing Soroka's counsel from asking leading questions of City employees; (4) allowing the testimony of the defense's accident reconstruction expert Wayne Slagle, and failing to strike his testimony due to the defense's violation of the witness exclusionary rule; (5) excluding relevant evidence; (6) prohibiting Soroka's expert witness, Peter W. Rossi, M.D., from testifying that the approximate total amount of Soroka's medical bills were "[n]ormal, [u]sual, [c]ustomary, and [r]easonable"; (7) allowing Officer Neves's counsel to ask him "highly suggestive leading questions"; (8) giving jury instruction nos. 7.3 and 8.9 and the verdict form to the jury, which were "misleading and unduly prejudiced [Soroka]"; (9) allowing the defense's expert witness, Martin Blinder, M.D., to state opinions as to Soroka's credibility; (10) denying Soroka's motion for a new trial; and (11) denying Soroka's motion for prejudgment interest.[2]  (Capitalization altered.)

---

[2]  We note that Soroka's Amended Opening Brief fails to comply in material respects with Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4) and (7).  In particular, Soroka makes numerous factual assertions and arguments without any supporting references to the record.  The argument section is often conclusory and difficult to discern.  Soroka's "failure to
(continued...)

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Soroka's contentions as follows, and vacate.

(1) Soroka contends that the Circuit Court abused its discretion by allowing the City to present evidence of Soroka's comparative negligence at trial. Soroka argues that the Circuit Court's dismissal of the City's counterclaim against Soroka with prejudice amounted to an adjudication on the merits and thus foreclosed any question of Soroka's comparative negligence. Soroka's argument appears to be rooted in the doctrine of res judicata.

The City alleged in its counterclaim that the disputed collision occurred as Soroka was exiting a Wendy's restaurant, while making a left turn to go north on Puuloa Road, and that she negligently collided with Officer Neves's southbound vehicle. The counterclaim sought damages caused to the City's police vehicle by Soroka's alleged negligence, and a determination of Soroka's relative and comparative fault, if the City were found to be negligent in connection with the collision. On July 18, 2019, about three months prior to trial, the City moved to dismiss the counterclaim pursuant to Hawaiʻi Rules of Civil Procedure Rule 41. At the hearing of the motion, the Circuit Court made clear that the dismissal of the counterclaim would not affect the City's defenses of contributory negligence and comparative negligence, which the City had asserted in response to Soroka's claims. The court subsequently entered the Order Dismissing Counterclaim, which expressly concluded:

> The counterclaim filed in the instant matter is based on relative liability and not subject to summary disposition because (a) per the allegations, . . . Soroka was executing

_____

2/ (...continued)
comply with HRAP Rule 28(b)(4) is alone sufficient to affirm the circuit court's judgment." Morgan v. Planning Dep't, Cty. of Kauai, 104 Hawaiʻi 173, 180, 86 P.3d 982, 989 (2004) (citing Schefke v. Reliable Collection Agency, Ltd., 96 Hawaiʻi 408, 420, 32 P.3d 52, 64 (2001)). Nevertheless, we have "consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible.'" Morgan, 104 Hawaiʻi at 180-81, 86 P.3d at 989-90 (quoting O'Connor v. Diocese of Honolulu, 77 Hawaiʻi 383, 386, 885 P.2d 361, 364 (1994)). We thus address Soroka's arguments to the extent discernible.

a left turn into traffic, and (b) [Officer Neves] was already in a lane to which [Soroka] was legally obliged to yield.  Accordingly, contributory and comparative negligence remain available defenses.

"By definition, the doctrine of res judicata only applies to new suits:  It is inapplicable in a continuation of the same suit." PennyMac Corp. v. Godinez, 148 Hawaiʻi 323, 327, 474 P.3d 264, 268 (2020) (citing 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 4404 (3d ed. 2020)).  Accordingly, res judicata does not apply here.

In any event, the Circuit Court plainly decided in dismissing the City's counterclaim that the affirmative defenses of contributory and comparative negligence were preserved and could be asserted by the City at the trial of Soroka's claims. On this record, we cannot say that the Circuit Court abused its discretion under HRCP Rule 41(a)(2) in dismissing the counterclaim "upon such terms and conditions as [it] deem[ed] proper."  Soroka's contention lacks merit.

(2) Soroka contends that the Circuit Court erred in allowing HPD Corporal Adam Lipka (**Lipka**) and HPD Officer Nicholas Schlapak (**Schlapak**) to express legal opinions at trial. Specifically, she contends that the officers should not have been allowed to provide expert opinion on the proper place to stop when exiting the Wendy's driveway, and that this error "severely prejudiced" Soroka.  Soroka further argues that the Defendants did not disclose the officers as expert witnesses and did not produce expert reports for either witness.

Officer Schlapak witnessed and responded to the collision.  Corporal Lipka later investigated it.  During trial, Deputy Corporation Counsel for the City (**DCC**) questioned Officer Schlapak about Exhibit 15, an enlarged Google Maps image of Puuloa Road and the Wendy's driveway, as follows:

> Q    So Officer Schlapak, you may step down to look at . . . the enlarged Exhibit D-15 that I have just published to the jury again.
>
> And do you recognize what's shown in this Google image?
>
> . . . .

4

        A      This is Puuloa Road.  This is the driveway to the Wendy's fast-food restaurant.  And this is the Wendy's fast-food restaurant itself.

        . . . .

        Q      And -- now, as a police officer, are you familiar with the traffic laws of the State of Hawaii?

        A      Yes.

        Q      Have you issued citations for the violations of such laws?

        A      I have issued citations in the past.

        . . . .

        [SOROKA'S COUNSEL]:  Your Honor, may we approach?

        THE COURT:  All right.

        . . . .

        [SOROKA'S COUNSEL]:  Your Honor, I believe she's going to try to elicit testimony as to what the plaintiff should or should not have done, and that would call for a legal conclusion.  He's not an expert.  He's not qualified to say what she should have done or should not have done.  And it's unduly prejudicial and irrelevant.

        [DCC]:  I'm going to have him explain what the markings on the street are.  I mean, he does issue traffic citations, and he would know what the lines on the street mean.

        THE COURT:  All right.  But unless . . . plaintiff has actually been cited by him, then his conclusions as to any possible traffic offenses would be legal conclusions.

        [DCC]:  Oh, I'm not going to have him testify about the legal conclusion.  It was just to establish that he is aware of the traffic laws in the State of Hawaii.

        THE COURT:  I understand.  We'll just break at this point.

(Emphases added.)

        After the break, DCC continued to question Officer Schlapak as follows:

        Q      So Officer Schlapak, looking at Exhibit D-15 . . ., can you identify what the slanted lines are that are on both sides of the Wendy's driveway in the image?  And you can step down and point to it so that we know that you're pointing at what I'm referring to.

        A      The slanted lines here and here?

        Q      Yes.  Can you tell us what those are?

        A      That's considered to be a marked safety zone.

5

Q        Okay.  And then what about the dashed –

[SOROKA'S COUNSEL]:  Excuse me, Your Honor.  May we approach the bench?

THE COURT:  All right.  Counsel, approach.

. . . .

[SOROKA'S COUNSEL]:  Before the break[, we talked] about whether he's going to offer opinions on the law as to what a person should or should not do.  And I think it's unduly prejudicial under 402, 403.

[DCC]:  He's aware of traffic laws. He's a patrol officer.  He understands street markings.

. . . .

THE COURT:  All right.  Well, the predicate is just whether these are official City and County markings or State markings.  He's not rendering opinions on the law. 291C, subparts. . . .  Given the proper foundation, <u>only reciting the actual statutes, that's not the same as rendering an opinion as to whether someone broke the law.</u>

[SOROKA'S COUNSEL]:  This is not something he offered in his deposition, and he's not listed as an expert. <u>It seems to me he's giving an expert opinion.</u>

THE COURT:  It's something that's -- you don't have to be an expert. . . .  So I'm finding it's consistent with 291C, which I'll have open here.  And I'll allow it. It's the law.

. . . .

BY [DCC]:

Q        Now, <u>there are some dashed lines that are in front of the Wendy's driveway that connect the two sections of slanted lines</u>.  Can you point that out to the jury.  Do you --

A        Are you referring to these?

Q        Yes.  Now, can you trace that -- those dash lines with your blue pen.

A        Yes.

Q        Just so that it's more visible on the poster board.  <u>What are those dashed lines for</u>?

A        <u>They indicate the stop line, ma'am.</u>

(Emphases added.)

We note that Officer Schlapak was not "only reciting the actual statutes."  He testified that the dashed white line past the end of the Wendy's driveway "indicate[d] the stop line[.]"  It does not appear that any part of HRS § 291C identifies a dashed (or broken) white line such as this as a

6

"stop line" or any other required stopping place.  See, e.g., HRS § 291C-38 (addressing "[l]ongitudinal traffic lane markings").  And to the extent Officer Schlapak may have been providing his interpretation of any state or local traffic law, he was applying that interpretation to the facts of this case, i.e., the broken white line that Soroka's vehicle crossed immediately before the collision.

In his trial testimony, Corporal Lipka similarly applied his interpretation of the law to the facts of the case.  Referring to Exhibit 15, DCC questioned Officer Corporal Lipka as follows:

> Q.    Okay.  Also what about the dashed line in front of the driveway?
>
> A     The dashed line in front of the driveway, that's a marker showing the edge of the lane of travel.
>
> Q     Now, can you tell us what the purpose of the line is, the dashed line in front of the -- the driveway.
>
> A     So the purpose of the dashed line is safety –
>
> [SOROKA'S COUNSEL]:  Objection.  Same objection.
>
> THE COURT:  All right.  Overruled.  Understood.
>
> Q     Now, can you explain again what the dashed lines in front of the driveway is for?
>
> A     So the purpose of how these have been put on the pavement there is to provide a safety zone for cars pulling out of that driveway to be able to pull out far enough where traffic isn't going to interfere with their ability to pull out onto the road safely there or any kind of obstructions on the side of the road.
>
> Q     Are there any laws governing how a vehicle exits a driveway onto a roadway?
>
> A     Yes.  There's one specific law under the 291C for unsafe emerging from driveways.
>
> Q     Is that 291C-64?
>
> A     I guess, yes.
>
> . . . .
>
> Q     Can you tell us what that law provides?
>
> A     So essentially it means the vehicles on the roadway have the right of way, not the one emerging from the driveway.  And as such, you must yield onto oncoming traffic before entering the roadway.

(Emphasis added.)  In reference to Exhibit 15, the latter

7

statement is plainly a legal conclusion regarding the facts at issue.[3/]

In Create 21 Chuo, Inc. v. Southwest Slopes, Inc., 81 Hawaiʻi 512, 522 n.4, 918 P.2d 1168, 1178 n.4 (App. 1996), this court stated that "there is a strong consensus among the jurisdictions, amounting to a general rule, that witnesses may not give an opinion on a question of domestic law or on matters which involve questions of law."  Relatedly, in Lahaina Fashions, Inc. v. Bank of Hawaii, 131 Hawaiʻi 437, 454, 319 P.3d 356, 373 (2014), the Hawaiʻi Supreme Court ruled that the testimony of a bank executive, who was also an attorney, that the bank and other respondents owed a fiduciary duty to the petitioner, amounted to a legal conclusion that could not raise a fact issue to defeat a motion for judgment as a matter of law.  In so ruling, the court quoted Create 21 for the rule that "[e]xpert or non-expert opinion that amounts to a conclusion of law cannot be properly received in evidence . . . ."  Id. (quoting 81 Hawaiʻi at 522, 918 P.2d at 1178); see Samson v. Nahulu, 136 Hawaiʻi 415, 429, 363 P.3d 263, 277 (2015) ("Generally, a witness is permitted to give an opinion on an ultimate fact involved in the case, but may not give opinions on questions of law as that would amount to legal conclusions.")

This is precisely what happened here.  The testimony of Officer Schlapak and Corporal Lipka, taken together, amounted to a legal conclusion that a driver (i.e., Soroka) exiting Wendy's was required to stop at the dashed line past the end of the driveway, and yield the right-of-way to traffic on Puuloa Road.

We further conclude that the Circuit Court's error in admitting this evidence resulted in substantial prejudice to Soroka's rights.  See Hawaiʻi Rules of Evidence (**HRE**) Rule

---

[3/]    We note that during the hearing on "Defendants['] . . . Motion *in Limine* No. 6 to Exclude [Soroka's] Expert Testimony," Soroka argued in part that Corporal Lipka should not be allowed to express an opinion "about where [Soroka] should have been, or where she should have stopped[,]" because "he's not an expert."  Soroka further argued that Corporal Lipka should be precluded from testifying "about . . . what the law is" and from "giv[ing] opinions about whether a law was violated."  The Circuit Court appeared to conclude that Corporal Lipka could provide an opinion "properly within the scope of his expertise, . . . as long as it's clear that the witness is not drawing a legal conclusion[,]" but that "[t]his is beyond the scope . . . of this exact motion."

103(a); <u>In re Est. of Herbert</u>, 90 Hawaiʻi 443, 462, 979 P.2d 39, 58 (1999). Defendants argued to the jury in closing that Soroka was negligent and "the proximate cause of th[e] accident." In support of this argument, Defendants repeatedly asserted that Soroka "exit[ed] the driveway of the Wendy's without stopping at that dashed line"; "violated [Officer Neves's] right of way when she rolled into the roadway without stopping at those skip-dash lines"; and "entered the roadway without stopping at that dashed line." Defendants also referred to Corporal Lipka's testimony in arguing that because Soroka failed to "stop at that skip-dash line[,] . . . she is the proximate cause of this accident." The jury found that Soroka was negligent, assigned 46% of the responsibility for the collision to her, and determined that her negligence was a legal cause of her injury. In these circumstances, the legal conclusions expressed by Officer Schlapak and Corporal Lipka in their testimony could have persuaded the jury to conclude that Soroka violated the law in exiting the Wendy's driveway, which was evidence of her alleged negligence in causing the collision. At a minimum, the inadmissible legal conclusions could have prejudicially affected the jury's assignment of 46% of the responsibility for the collision to Soroka. On this record, Soroka has established that the Circuit Court's error substantially prejudiced her rights. The judgment on Count I must therefore be vacated and remanded for a new trial.

(3) Soroka argues that the Circuit Court erred in preventing her from asking Officer Schlapak, whom she called as an adverse witness, leading questions on cross-examination based on HRE Rule 611(c) and <u>Haney v. Mizell Mem'l Hosp.</u>, 744 F.2d 1467, 1478 (11th Cir. 1984).

However, it is well settled that

> "Matters regarding the examination of witnesses are within the discretion of the trial court[.]" <u>The Nature Conservancy v. Nakila</u>, 4 Haw. App. 584, 596, 671 P.2d 1025, 1034 (1983) (citations omitted).

> Under this standard, we will not disturb the trial court's exercise of its discretion unless it is clearly abused. An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice

> to the substantial detriment of a party-litigant.
>
> State v. Jackson, 81 Hawaiʻi 39, 47, 912 P.2d 71, 79 (1996)
> (citations and quotation marks omitted).

State v. Pham, No. CAAP-16-0000404, 2017 WL 2829281, at *6 (Haw. App. June 30, 2017).

Soroka's bare assertion that she was unable to elicit truthful testimony from Officer Schlapak, without more, does not demonstrate that the Circuit Court abused its discretion. Officer Schlapak works for the City, making him an adverse witness. However, Soroka's counsel was able to ask Officer Schlapak questions and some of the objections based on leading questions were overruled; Soroka points to nothing indicating that Officer Schlapak's answers were incomplete, evasive, inaccurate, or untruthful. Soroka fails to articulate how asking leading questions (or which leading questions) would have changed any of Officer Schlapak's answers or established additional evidence. Under these circumstances, we cannot conclude that the the Circuit Court abused its discretion.

(4) Soroka argues that the Circuit Court erred when it refused to strike Wayne Slagle's testimony after Soroka elicited testimony from Slagle indicating the City provided him with information regarding the testimony of Soroka's expert, David Karlin. Soroka argues that providing Slagle such information gave him the opportunity to potentially alter his testimony, thereby violating the witness exclusionary rule.

In State v. Alongi, No. CAAP-18-0000591, 2022 WL 5431758, at *4, *6 (Haw. App. Oct. 7, 2022), we explained:

> "The purpose of HRE Rule 615 is to prevent the shaping of testimony by one witness to match that of another, and to discourage fabrication and collusion."
>
> . . . .
>
> . . . Noncompliance with HRE Rule 615 does not require a new trial "unless the court's decision to allow the allegedly tainted testimony was an abuse of discretion or resulted in prejudice to the defendant." "The defendant has the burden of proving that there was either prejudice or an abuse of discretion."

Id. (citations omitted) (quoting State v. Elmaleh, 7 Haw. App. 488, 492-94, 782 P.2d 886, 889-90 (1989)).

10

Soroka has not demonstrated how the City's briefing of Slagle on Karlin's testimony altered Slagle's testimony. Soroka makes no argument as to how such briefing was prejudicial nor makes a showing that allowing Slagle's testimony was an abuse of discretion. Moreover, Soroka's counsel extensively cross-examined Slagle regarding his discussions with the City leading up to his testimony. The jury had the opportunity to hear this examination, and to determine for itself whether Slagle's testimony had been improperly influenced by any conversations he had with the City regarding Karlin's testimony. We cannot conclude that the Circuit Court abused its discretion in declining to strike Slagle's testimony.

Soroka also asserts that the Circuit Court erred in allowing Slagle "to testify as to what the law requires." (Capitalization altered.) Soroka fails to identify the challenged testimony and to make a discernible argument. Therefore, we conclude that this argument is waived. HRAP Rule 28(b)(7).

(5) Soroka argues that the Circuit Court abused its discretion by preventing her from presenting "the best evidence available" regarding the conditions surrounding the collision, *i.e.*, a surveillance video, which Soroka admits does not depict the collision itself. This argument is without merit for several reasons, including but not limited to the fact that the video was not timely disclosed as a trial exhibit in violation of court rules and the Circuit Court's order requiring the exchange of trial exhibits by September 23, 2019. Moreover, Soroka was allowed to present still photos from the video and makes no cogent argument as to how she was prejudiced by being limited to still photos that showed the scene of the collision, rather than a video, which had missing frames, light enhancements, and did not show the accident.

(6) Soroka contends that the Circuit Court erred by prohibiting her neurologist, Dr. Rossi, from testifying regarding his opinion that the approximate total amount of Soroka's medical bills resulting from the injury were "normal, usual, customary, and reasonable."

HRE Rule 602 provides:

> **Lack of personal knowledge**. A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness'[s] own testimony. This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.

HRE Rule 703 provides:

> **Bases of opinion testimony by experts**. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court may, however, disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

Here, Soroka did not lay the proper foundation for Dr. Rossi to testify to the reasonableness of Soroka's medical expenses. In fact, Dr. Rossi expressly disqualified himself as an expert in evaluating the costs of medical expenses, stating, *inter alia*: "I have no formal training as a medical economist;" "I'm not a medical economist;" and "I cannot say that the charges were what they should have been . . . I don't do that. I don't have that expertise." We conclude that the Circuit Court did not err when it sustained the City's objection to Dr. Rossi's testimony regarding the reasonableness of Soroka's medical expenses.

(7) Soroka argues that the Circuit Court abused its discretion in allowing the City to ask Officer Neves leading questions. The City points out that Soroka did not object to specific questions that she now asserts were improper on appeal.

HRE Rule 611 provides, in part:

> (a) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
>
> . . . .

12

(c) Leading questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily, leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

The Circuit Court had the discretion to allow the City to ask leading questions here. Moreover, Soroka fails to identify how she was prejudiced by the testimony. We conclude that this point of error is without merit.

(8) Soroka argues that the jury instructions and special verdict form were misleading and unduly prejudicial, warranting a new trial. Soroka argues that the Circuit Court should have provided the jury with an instruction indicating that the concept of "right of way d[id] not apply in this case[,]" citing State v. Arena, 46 Haw. 315, 329, 379 P.2d 594, 603 (1963), overruled by Samson v. Nahulu, 136 Hawaiʻi 415, 363 P.3d 263 (2015) (stating a driver exercising a right-of-way may still be determined to have been negligent).

As an initial matter, we note that Soroka does not point to any proposed jury instruction based on Arena that she submitted to the Circuit Court for consideration. It appears she made only a "[b]y the way" request to the court for a non-specific Arena instruction while the parties were settling jury instructions before closing arguments. On appeal, Soroka makes no discernible argument as to exactly what instruction she sought. See HRAP Rule 28(b)(7). Additionally, Soroka does not cite to any of the jury instructions that were actually given and explain how they were erroneous or misleading.

In any event, Arena is wholly distinguishable on a number of bases, including that this case involved an authorized emergency police vehicle responding to a Priority 1 call. The law is clear that emergency police vehicles in these situations have privileges like exceeding the speed limit, regardless of whether they use their signals, subject to the conditions and limitations set forth in HRS § 291C-26. See, e.g., HRS § 291C-26(b)(3), (d); see also HRS § 291C-65(b).

Upon review, we conclude that the special verdict form was not confusing. It asked for the "total" amount of damages,

13

and later separately asked the jury to decide what portion of Soroka's damages are attributable to the pre-existing condition. The jury instructions did not conflict with the special verdict form. Nothing in the record indicates the form was "prejudicially insufficient, erroneous, inconsistent, or misleading." See Weite v. Momohara, 124 Hawaiʻi 236, 259, 240 P.3d 899, 922 (App. 2010) (quoting Tabieros v. Clark Equip. Co., 85 Hawaiʻi 336, 350, 944 P.2d 1279, 1293 (1997)).

(9) Soroka argues that the Circuit Court erred in allowing the City's expert witness, Dr. Blinder, to testify as to Soroka's credibility. However, Soroka never objected to nor moved to strike Dr. Blinder's testimony at trial. Accordingly, Soroka did not properly preserve her claim about Dr. Blinder's attack on her credibility, and "waived h[er] ability to challenge the statements under HRE Rule 103(a)(1), which states that '[e]rror may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appears on the record.'" State v. Engelby, 147 Hawaiʻi 222, 232, 465 P.3d 669, 679 (2020) (emphasis omitted) (citing State v. Metcalfe, 129 Hawaiʻi 206, 224, 297 P.3d 1062, 1080 (2013) (point on appeal was forfeited because defense did not object to expert's testimony at trial)).

This argument was waived.

(10) Soroka argues that the Circuit Court erred in denying her motion for a new trial without explaining its reasons for denying the motion. In light of our ruling that this case will be remanded for a new trial on other grounds, we need not reach this issue.

(11) Soroka argues that the Circuit Court abused its discretion by denying her motion for prejudgment interest. As this case will be retried, we decline to reach this issue, without prejudice to a renewed request for prejudgment interest upon conclusion of the new trial.

Because Defendants are no longer the prevailing parties, we vacate the Circuit Court's award of costs to

14

Defendants.[4] See Ass'n of Owners of Kalele Kai v. Yoshikawa, 149 Hawaiʻi 417, 421, 493 P.3d 939, 943 (2021).

For the reasons discussed above, we vacate the following, entered in the Circuit Court of the First Circuit: (1) the September 8, 2020 Judgment as to Count I of the Complaint and the award of costs to Defendants; and (2) the May 18, 2020 "Order Granting in Part and Denying in Part Defendants City and Couinty of Honolulu and Clarence F. Neves, Jr.'s Motion for Taxation of Costs, Filed on December 9,2019." We affirm the Judgment in all other respects. The case is remanded to the Circuit Court for a new trial on Count I.

DATED: Honolulu, Hawaiʻi, May 2, 2025.

On the briefs:

John S. Edmunds and
Michael J.Y. Wong
  for Plaintiff-Appellant.

Monica K.S. Choi,
Page C. Ogata, and
Nicolette Winter,
Deputies Corporation Counsel,
City and County of Honolulu,
  for Defendants-Appellees.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

---

[4] On May 18, 2020, the Circuit Court entered an "Order Granting in Part and Denying in Part Defendants['] . . . Motion for Taxation of Costs, Filed on December 9,2019." The court awarded costs to Defendants in the amount of $9,039.85, based on the determination that "Defendants are the prevailing party, pursuant to Rule 25 of the Hawaiʻi Arbitration Rules."